## No. 12,755.

### ALLIE A. AIREY VS. THE PULLMAN PALACE CAR. COMPANY.

ON WRIT OF CERTIORARI AND ON APPEAL AS RELATES TO THE PULLMAN PALACE CAR COMPANY, ORIGINALLY ONE OF THE DEFENDANTS.

As to this defendant, the suit was dismissed on an exception of no cause of action. Subsequently, through inadvertence, a judgment was signed against this defendant. The court *a qua* afterward signed the judgment it was intended to sign in the first place. The error was complained of, both in the petition for writ of *certiorari* and in answer to the appeal. It was manifestly an error; the judgment against the Pullman Palace Car Company, based upon the error, was of no value whatever.

ON THE MERITS AS RELATES TO THE TEXAS & PACIFIC RAILWAY COMPANY.

As between the passenger and the railroad company, the latter is responsible to the former for a breach of a contract of carriage growing out of the negligence or oversight of employees of the Pullman Car Company.

It devolves upon the railroad company, through the employees of the parlor car company to timely arouse passengers to enable them to get off at the station of their destination. A passenger carried beyond destination may have a right of action. The contract of the passenger is not subject to limitation of responsibility, if any such responsibility was stipulated between the parlor car company and the railroad company.

Loss of time, "expenses occasioned" and "inconvenience" are elements of damages proven.

ON APPLICATION FOR WRIT OF CERTIORARI.

The copy of the record was complete.

The issue involved in the application for the writ was considered and disposed of in the same case (title as above) on appeal.

There is no ground for the writ. It is discharged.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Jos. N. Wolfson* for Plaintiff, Appellant.

*Percy Roberts* for Pullman Palace Car Company, Defendant, Appellee.

*Howe, Spencer & Cocke* for Texas & Pacific Railway Company, Defendant, Appellee.

Argued and submitted April 7, 1898.
Opinion handed down April 18, 1898.

## ON THE MERITS.

The opinion of the court was delivered by

BREAUX, J. Plaintiff sued the defendant for damages growing out of a contract of carriage with which (the plaintiff urged) the defendant failed to properly comply.

Plaintiff, in feeble health, in June, 1895, came to this city to undergo a surgical operation. After her arrival here she was taken sick with malarial fever; the intended operation was postponed. Though in a weak condition she decided to return to her home in the parish of Natchitoches. Her attending physician considered her sufficiently restored to health to make the trip.

Plaintiff boarded a west-bound train at about 7 P. M. She had a mileage ticket which she, when called upon, presented to the conductor. She also had a berth ticket, which entitled her to a berth on one of the sleepers of the train. Plaintiff stated that she requested the conductor of the Texas & Pacific train to awaken her in time to alight from the train at Cypress Station, and that he promised that he would. This promise is not denied. The train arrived at Boyce (a station east of Cypress) at about 3:45 in the morning.

The conductor of the Texas & Pacific Railway and porter of the Pullman were relieved, being the end of their run, and another conductor and porter supplied their places. The new conductor inquired of the porter, servant of the Pullman, who had been on duty since 3 o'clock, whether they had any passengers for any way stations between Boyce and Shreveport.

He answered "No." This new conductor stated that he had no other means of finding out the landing place of the passengers on the way. He could not himself go in the car and arouse the sleeping passengers. It would be very annoying to them. Without notice to plaintiff the train passed Cypress. About twenty miles beyond that station plaintiff, who had arisen after the car had left Cypress, stated to the conductor that she wished to get off at Cypress. He stated in reply, that the train had already passed that station some distance. He requested her to get off at the next station, where there was a hotel, and he would commit her to trustworthy persons and see that she returned on the next train without any expense whatever to her. She declined the offer, and expressed the wish of going to Shreveport, where she had relatives, to which place she did go and remained about two weeks.

During the time she was at Shreveport she was offered a return ticket by the defendant, which she declined to accept.

Plaintiff alleged, and she stated as a witness, that her disappointment was very great when she learned that she had passed the station where she was to get off, to take the Natchitoches tap road on her way to her home, six miles further; that it was quite a shock to her in her nervous and weak condition of health.

The Pullman Palace Car Company filed an exception of no cause of action. This exception was maintained on December 3, 1896, and the suit against this company was dismissed.

The other defendant pleaded the general issue, and especially denied plaintiff's charge of negligence.

On the seventh day of May, 1897, a judgment for ten dollars was entered in error and by oversight, against the Pullman Palace Car Company (although a judgment of dismissal had been entered in its favor some time previous).

On the sixteenth day of November, 1897, the judge of the District Court sought to correct the error by signing another judgment for the amount at which he had assessed the damages against

the Texas & Pacific Railway Company; the remaining defendant after the suit against the Pullman Palace Car Company had been dismissed, as just stated. Plaintiff prosecutes this appeal from both judgments—*i. e.*, from the two judgments signed.

No appeal was taken from the first judgment dismissing the action against the Pullman Palace Car Company, on the ground of no right of action, which had not been signed.

We, in the first place, took up for determination the case against the Pullman Palace Car Company, the issues in that case being separate and distinct from those in the case against the Texas & Pacific Railway Company.

We are led to infer that the Texas & Pacific Railway Company admitted that an error had been committed, without, however, as we take it, its conceding that the judgment signed to correct the clerk's blunder was correct.

Counsel for plaintiff expressly stated in argument that he did not expect, and that he did not desire, a judgment against the Pullman Palace Car Company.

In view of this statement, and of the facts showing error, patent of record, we can not do otherwise than pronounce null the judgment signed against the Pullman Palace Car Company.

This company is before us as an appellee. It did not choose to appeal; no other alternative is left to us save to apply the rule that a reversal carries with it the cost of appeal.

We pass to the case against the Texas & Pacific Railway Company, made a co-defendant of the Pullman Palace Car Company.

By reason of the business relations between the Pullman Palace Car Company and the Texas Railroad Company, each, in our judgment, may be made to respond in damages. As relates to negligence such as is here charged, they are in *pari delicto*. As we take it, these companies were operating trains unitedly and in a measure, at least, in common. The principle applicable was settled in Williams vs. Pullman Palace Car Company, 40 An. 417, in which this court held: The Railway Company was responsible to a passenger for the laches of the Parlor Car Company. He, the injured passenger in the case, as in the case before us for determination, held a ticket of the Palace Car Company, and a passenger ticket of the railway company.

The evidence discloses in the case here, with reference to arousing passengers, that the conductor made proper inquiry, and was not

correctly notified by the porter.  It is quite true that it is the busi-
ness of the conductor to manage the train in his charge, according
to regulations, which regulations do not, however, include the neces-
sity of his personally arousing passengers in Pullman Palace Cars on
arrival of the train at the place of their destination.  This duty
more particularly devolves upon the employees in charge of the
sleepers.  But this view of his service does not have the effect of
lessening the railway company's responsibility.

This court clearly approved, in the case cited *supra*, the principles
set forth in several decisions in other jurisdictions, that the conductor
and porter of the sleeper car company were in law, as relates to
passengers, the railway's servants and employees.

We have naught to do with the *status* of the Palace Car Company;
whether it was or was not a common carrier.  The plaintiff was
traveling on a ticket evidencing a contract with the defendant.  She
could, in our opinion, hold the defendant railway company to the
performance of the whole contract.

The plaintiff gave herself concern to notify those in charge as to
where she was going.

Besides, the passenger check signed by the Pullman conductor
was for a berth from New Orleans to Cypress.  That was in itself
proof of the passenger's station to get off.  This proof bound all
concerned.

Her nephew, who accompanied her to the station in New Orleans,
specially requested an employee of the parlor car to see that she was
awakened in time to get off at the station to which she was going.
In addition she had the assurance of the conductor, that she would
be awakened in time.

Evidently some one among the employees was at fault, for the
passenger, we think, had given notice enough.

The negligence of the porter or conductor of the parlor car was
the negligence of the railroad company.

We are constrained to hold that the failure in duty of the Pullman
porter was chargeable to defendant.

We are brought, by the conclusion to which we have arrived, to a
discussion of the amount plaintiff was damaged.

This court has already decided that a railroad company carrying,
in violation of its contract, a passenger beyond the designated sta-
tion is responsible for damages.

The amount in that case was restricted to the actual pecuniary loss sustained.    Judice vs. Southern Pacific R. R., 47 An. 258.

.It was determined in the cited case that plaintiff had avoided minimizing the inconvenience to which she was subjected.

The court applied the rule in case cited *supra*, that where one is entitled to the avail of a contract, and can save himself from loss growing out of violation of it, at small expense, it is a matter of duty, failing in which he can only charge the delinquent with such damage as the person claiming could not prevent.

This was also the view stated in Beers vs. Board of Health, 35 An. 1132, and "in the absence of bad faith of the defendant Board of Health, no punitive damages were assessed."

Judgment for nominal damages only was allowed.

The defendant contended that plaintiff did not in the least exert herself to reduce the damages, and that having chosen to go to Shreveport instead of accepting return fare and the opportunity to return by the next train, she was not entitled to her expenses while in Shreveport.

It was natural, after the passenger had passed the way to her home, for her to go further—*i. e.*, to Shreveport, in order to find shelter and comfort among friends and relatives, instead of stopping, as she was requested by the conductor, at a town hotel, among strangers.

Other items for damages claimed are, urgent business requiring her presence at home, shock to plaintiff's nervous system when she was informed that she had passed the station, humiliation and delay.

The asserted loss in a matter of business was not traced to the absence of plaintiff caused by the failure to stop at the station to which she was going.

Without a showing connecting plaintiff's alleged loss growing out of her absence from home, a judgment allowing damages would be unwarrantable.    There is no intimation of what she might have done had she been present to compel an unwilling tenant to pay a debt which he failed to pay.    This indebtedness was the loss charged. The other element of damages, nervous shock to the system, is equally as untraceable to the negligence of defendant.

It was not shown, after having passed the home station, that any symptom of sickness made its appearance, occasioned by defendants negligence or breach of duty.

We have not discovered any indication of disease for which the defendant can be held in damages.

It does not appear that it had other effect than the shock.

No one is expected to be of good cheer when taken away from the place of destination.

But it is not a proper element of damages unless injury is shown.

No injury or disturbance to health was proven.

There was no manifestation of physical weakness.

This brings us to the humiliation to which plaintiff was subjected, alleged in her petition.

We do not think that word applies, or has any meaning in this case.

No one was humiliated, or had the least cause to feel humiliated.

It was unquestionably a sore annoyance to have been forgotten, but nothing, so far as the record discloses, occurred having the least tendency to humiliate.

There remains for consideration the questions growing out of " inconvenience," delay and expenses.

This court has decided, in at least one case cited, *supra*, that they may give ground to claims for damages.

It is manifest that the plaintiff must have felt some inconvenience. She was subjected to a delay and made to disburse to meet expenses.

We think the amount should be larger than heretofore allowed— *i. e.*, ten dollars. Absence from home and the inconvenience, if they amount to anything at all, can not in our view, be less than fifty dollars, under the circumstances shown.

It is ordered, adjudged and decreed that, as against the Texas & Pacific Railway Company, defendant, the amount of the judgment is increased from ten to fifty dollars; to the extent of that increase the judgment is amended, and, as amended, it is affirmed at appellee's costs.

It is further ordered, adjudged and decreed that, as against the Pullman Palace Car Company, the judgment against it as appellee, dated the 13th day of May, 1897, is annulled and decreed void.

This appellee to pay its costs of appeal, and the appellant, as to this judgment, is to pay the cost of the District Court.

### APPLICATION FOR WRIT OF CERTIORARI.

The relator applied for a mandate to have an error corrected.

He avers that the name of Pullman Palace Car appears as defendant, condemned to pay the sum of ten dollars to the plaintiff.

That the judgment was rendered against the Texas & Pacific Railway Company.

That by a blunder of the clerk, not discovered in time, a judgment written by him against the Pullman Palace Car was signed.

The relator, to sustain his application, relies chiefly on facts which became known to him after the judgment had been signed.

As a general rule conclusions of fact can not be inquired into on writ of *certiorari*. The motion for the writ relates exclusively to facts.

Besides the relator had a remedy by appeal to correct the error of which he complains. The remedy by appeal is adequate.

The decisions of this court sustain the rule, where the suit is to be decided in the last resort, and where there is an appeal the writ of *certiorari* will not issue. C. P. 889.

There is no suggestion here of a diminution of the record. The writ is not applied for in aid of appellate jurisdiction.

The relief is sought exclusively under the supervisory power of this court.

In State *ex rel*. Keplinger vs. Perez, Justice of the Peace, 48 An. 1348, we said: The writ of *certiorari* (not in aid of appellate jurisdiction) is not the remedy to have appealable issues reviewed.

This decision, of recent date, conforms with a number of preceding decisions.

There is an appeal actually pending in this case.

It is therefore ordered, adjudged and decreed that the rule *nisi* is discharged, and the application for a writ of *certiorari* dismissed at relator's costs.