No. 13,220.

HENRY BADER vs. SOUTHERN PACIFIC COMPANY.

### SYLLABUS.

Where a passenger, by reason of the mistake of the conductor, in giving him a check, is ejected from a train before reaching his destination, he should not increase the damage and can not recover for loss or injury which is not the consequence of the wrong done him, but of his own wilful acts of omission or commission.

APPEAL from the Civil District Court, Parish of Orleans.—
St. Paul, J.

A. E. & O. S. Livaudais for Plaintiff, Appellee.

Denegre, Blair & Denegre for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.  Plaintiff claims $5,000 as damages, actual and exemplary, said to have been sustained by reason of his alleged forcible and unlawful ejection from a passenger train.

Defendant pleads the general denial.

We find the following facts to be sustained by a preponderance of evidence and probability, to-wit:

Plaintiff, who was about sixty-three years old, bought a ticket from New Orleans to Lafayette, intending to go from there, by private conveyance, to Breaux Bridge, there, to spend the summer among his family connections and ply his trade of shoemaker.  Shortly after the train left New Orleans, the conductor took up his ticket, and placed in his hat a slip, or conductor's check, which indicated that his destination was Franklin, a station over forty miles short of Lafayette. The plaintiff did not get off at Franklin, and when the train reached Baldwin, four miles farther on, he was notified that he had passed his station; he said that he wanted to go to Lafayette; the conductor replied that he had better get another ticket, and either the conductor, or some other train official, intimated, or told him in words, that he must get off the train.    There was, however, very little said. The plaintiff is a man of limited intelligence, and appears to have made no protest or explanation, nor did he insist upon his right to be carried to Lafayette, or offer to pay additional fare.  Nor, upon the other hand, was any force, or objectionable language offered to him.  After he had left the train, or whilst leaving, he said that he would "claim the case," meaning that he would make a claim for damages.  From Baldwin to New Iberia is twenty miles, from New Iberia to Lafayette nineteen miles, and from Layayette to Breaux Bridge eight miles.    Breaux Bridge may, however, be reached by going from Baldwin to New Iberia, from New Iberia to St. Martinsville, fourteen miles, and from St. Martinsville to Breaux Bridge twelve miles.   and the plaintiff selected the latter route, for reasons

which will appear. He says that he had about seventy cents in his pocket. That amount would have carried him, on the next train, some few miles beyond New Iberia. His story is that he left Baldwin between twelve and one o'clock on Saturday, a little while after his arrival, and walked in the direction of New Iberia; that night overtook him on the way, and he lay down on the railroad track, and went to sleep, and was awakened by a train which came near running over him, but that he could not tell whether it was running towards New Orleans or in the other direction. He reached New Iberia, and thence passed on to St. Martinsville, the next day. He had lived in St. Martinsville for twenty-five years; had reared a family there, and had a brother-in-law living there, who received him into his house, where he remained during Sunday night. The brother-in-law then offered to arrange to get a conveyance to carry him on to Breaux Bridge, but the plaintiff declined the offer, though he says that he was pretty well worn out. He accordingly started on Monday morning to walk the balance of the way, say about twelve miles, and this distance he claims to have accomplished with much difficulty and suffering, walking the whole distance, with the exception of a half mile, when he was given a ride in a buggy, and the last two miles, over which he rode in a wagon, his feet being so swollen, bruised and inflamed, that he was laid up with them, and, for a month or two, was obliged to wear slippers, or loose shoes.

The evidence leaves no doubt upon our minds that a mistake was made by the conductor, in giving the plaintiff a check which called for Franklin instead of Lafayette. We feel equally satisfied, that, when he had passed Franklin, the conductor, in the belief that he had traveled farther than he was entitled to travel on the ticket which he had purchased, would have put him off by force, unless he had made some satisfactory explanation, or had been willing to pay additional fare, though, as a matter of fact, no force was used, and no harsh language. The plaintiff, however, as we have stated, offered no explanation, and seems to have made no protest. He had in his pocket a baggage check showing that his trunk had been checked to Lafayette, and, under the rules of the company, such a check would not have been issued, save upon the exhibition of a passenger ticket to the same place, but it did not occur to him to show it. After getting off the train, he might have purchased a ticket which would have carried him at least to New Iberia, and beyond, but he chose to walk.

It does not appear that he made any attempt to obtain shelter on Saturday night, or that there was any particular reason why he should have chosen the railroad track as a bed upon which to sleep. During the night of the twenty-eighth of May, the mere fact of his being out of doors was no great hardship, but the railroad track was neither a comfortable bed, nor a safe one, and we imagine that he might, without much effort, have done better. It seems strange, too, that, when he reached New Iberia, only fourteen miles from a town in which he had lived for twenty-five years, in a country where his family had grown up and married, and where he had a brother-in-law, and sons-in-law scattered about, some at St. Martinsville and some at Breaux Bridge, and others, perhaps, elsewhere, he should not have found some one who would have been willing to save him the necessity of walking farther. His son-in-law, Mr. Nasson, was to have sent a buggy to meet him at Lafayette, and in fact did so. It appears that he could have been reached by telephone, so that the plaintiff might have paid his fare from Baldwin to New Iberia and have then arranged for his farther transportation by speaking (through a telephone) to his son-in-law, if he knew no one in New Iberia; or, having walked to New Iberia, he could have paid his fare to St. Martinsville and put up with his brother-in-law until arrangements were made for his transportation beyond that point. He, however, not only made no effort to help himself, but he refused assistance when it was offered to him; and, if his tramp from St. Martinsville to Breaux Bridge occasioned him physical suffering, and his feet were swollen and bruised when he reached the latter place, it was almost entirely his own doing. Under these circumstances, we are of opinion that $750 is an excessive amount to allow in the way of damages. The railroad company made a mistake, and they must suffer the consequences. But the injury done to the plaintiff was not intentional. There were no circumstances of aggravation connected with it, and the suffering of which the plaintiff complains was not so much the consequence of the mistake as of his wilful purpose to make the situation worse instead of better.

In Judice vs. Southern Pacific Co., 47 Ann., 257, it appears that the plaintiff was carried a little over two miles beyond her station; that she insisted that the train should back to the station, and that she refused to wait an hour for another train, or to avail herself of a

hand-car, which was at her service, but walked back over the car track, though there was a public road which she might have taken.

This court said, quoting from Beer vs. Board of Health, 35th Ann., 1132: "The authorities agree, that, after a wrong has been committed, the damaged party shall not increase it, and that if he does, he shall have no right to complain for loss or injury sustained in consequence of his wilful acts of commission or omission."

And a judgment in favor of the plaintiff was reduced from fifty dollars to three dollars, the plaintiff paying the cost of the appeal.

In Dave vs. Railroad Company, 47th Ann., 576, it appeared that plaintiff was carried about eighteen hundred feet beyond his station on a rainy night, and was then ejected; and he also complained of harsh language. He was allowed fifty dollars, and the judgment was affirmed.

In Morse vs. Duncan, 14 Federal Rep., 396, it was said: "No recovery can be allowed for any inconvenience or physical hardship, when the same was undertaken voluntarily."

And in Spry vs. K. & T. R. Co., 73 Mo., App. 203, the court said:

"If a passenger can find shelter, where he is wrongfully put off, he can not recover for injuries received in voluntarily walking to his destination."

In the case before us, time was of no importance to the plaintiff. He was going to the country to spend the summer, and whether he reached Breaux Bridge on Saturday or Monday, was a matter of no consequence. He was not insulted in any way, and we doubt very much whether any one, save the conductor and the gateman of the train, knew of what occurred at Baldwin unless they were told by the plaintiff. Under those circumstances, we think that $250.00 would reasonably compensate him for the injury sustained.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be amended by reducing the amount allowed from $750 to $250, and, as thus amended, that it be affirmed, the plaintiff pay the costs of the appeal.