assessed, and would be sold to pay a few dollars of taxes.

The proceedings were radically defective, and the tax sale was a nullity.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended so as to decree that the plaintiffs are the owners of all the lands described in their petition, without exception or reservation, and so as to decree the nullity of the tax sale relied on by the defendant, and to cancel its inscription on the public records, and that, as thus amended, said judgment be affirmed; defendant and appellee to pay costs of appeal.

———

(36 South. 862.)

No. 15,128.

MARX v. LOUISIANA WESTERN R. CO.

(May 23, 1904.)

### CARRIERS—EXPULSION OF PASSENGER—DAMAGES.

1. When a railroad company fails to run its train on time, and the ticket holder boards the first passenger train thereafter, he is not to be ousted from the train on the ground that the limit of the ticket had expired.

2. The railroad company is without right to relief on the ground that the limit of the ticket had expired by limitation, it alone having caused the delay to the passenger.

3. The train due was late, and, in addition, passed the flag station without stopping as expected at the flag station. These were mishaps into which inquiry should have been made before ejecting the passenger.

4. The passenger properly delivered his ticket, and explained why he was not on the first train. This was enough to place the one in charge on inquiry, and to stay expulsion until he could find out whether the passenger stated the truth or not.

5. The amount of damages as fixed does not appear excessive.

6. The wrongful expulsion of a passenger from a train is not only a breach of contract, but an offense or tort, and the elements of damages include compensation for mental suffering arising from the humiliation and degradation of being expelled in the presence of other passengers. Fetter, Carriers of Passengers, vol. 2, p. 1341 et seq.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Denis Miller, Judge.

Action by Joseph Marx against the Louisiana Western Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Denègre, Blair & Denègre and Pujo & Moss, for appellant. Sompayrac & Toomer and Lyle Saxon, for appellee.

BREAUX, C. J. Plaintiff, Joseph Marx, brought this suit against the defendant for the sum of $5,018.90 damages he alleges to have sustained by his ejectment from one of its cars by its conductor. Judgment was rendered by the district judge for plaintiff in the amount of $250, with legal interest from date of judgment until paid.

The statement of plaintiff is that on the 19th day of August, 1903, wishing to take passage on defendant's train from Vinton to the town of Welsh, La., he called on the agent of the company at the station at Vinton at about 11 o'clock p. m., and bought from him a railroad ticket, for which he paid the sum of $1.40.

That his intention at the time he bought the ticket was to leave on the east-bound train due at Vinton at 11:35; that is, about half an hour after he had bought his ticket for the trip.

The complaint of plaintiff, in short, is that he bought a passenger ticket from the defendant for the trip, and that no train was furnished him to ride on, from the place at which he bought this ticket to the place at which it was his purpose to go at the time that he bought it.

Further, that he took the first train that stopped after he had bought the ticket.

The defendant seeks to meet this com-

¶ 1. See Carriers, vol. 9, Cent. Dig. § 1023.

plaint by urging, as relates to the facts, that the ticket in question was good only for one day, and that when tendered by plaintiff to the conductor it had expired by limitation; that the ticket on its face sets forth that it shall be void after the date stamped thereon.

Defendant charges plaintiff with having failed to meet the train that arrived on the night of August 19, 1903, and particularly avers "that on the next day, after said ticket had expired, he boarded another of defendant's trains, without requesting its agent that the price of the ticket be refunded, or that another issue in its stead."

The foregoing is a quotation from defendant's answer.

Defendant avers that its conductor requested plaintiff to get off at Edgerly, a station that is but a few miles distant from Vinton, where plaintiff had boarded the train, and procure another ticket, and that he informed plaintiff that his ticket issued to him at Vinton would be redeemed at any station. This, defendant says, plaintiff absolutely refused to do. Defendant denies that plaintiff was violently ejected or subjected to humiliation.

It is amply shown—besides, the fact is not contested—that the train due at Vinton at 11:35 was late, and arrived at that place at 4:30 o'clock in the morning. It did not stop at all at that place. Although the local agent attempted to signal the train, in his energetic attempt he broke his lamp by striking it against an obstacle near him.

We will here state that Vinton is a flag station, at which the train will not stop unless it is flagged, or unless it has passengers for the place.

On this occasion plaintiff was informed that the train would surely stop, because there was a dead man aboard, consigned from Galveston to Vinton. It happened that the corpse was not aboard, as it was sent only the next day by another train, and in consequence of the mishap to the lamp and the delay in sending the corpse the train passed on without stopping.

Another train came on about 8 o'clock, which plaintiff boarded. When called upon for his ticket, he handed the ticket bought by him for passage on the 11:35, which the conductor accepted and punched. A little time afterward the conductor returned to where plaintiff was, and demanded the fare, and tendered back the ticket he had punched, as he states, in error. Plaintiff refused to receive the ticket tendered.

The conductor then said to plaintiff that he would have to get a new ticket or pay his fare. Upon arriving at Edgerly, plaintiff was ejected from the train in a manner, we infer, more emphatic than polite.

The conductor testified that he had the authority, had he so chosen, to let plaintiff go to his place of destination on the ticket which plaintiff held, and which he had already punched.

One of defendant's grounds is that plaintiff did not bring his ticket to the office of the local agent the morning following the day on which he bought it, to have it redeemed, in accordance with notices that are posted in the waiting room.

The poster in question affords no ground to escape from liability. It was incumbent upon the railroad to furnish transportation. This it failed to do.

Passengers who are delayed in some way may be informed that the carrier will not take advantage of their delay that they can have their tickets redeemed at the office.

It is different when the carrier fails to furnish the transportation for which the ticket calls.

True, a railroad company is not responsible in damages for ejecting a passenger when the ticket he tenders for his fare had expired.

Here, however, the passenger had done all that was necessary to be done by boarding the first train that stopped at the depot at

which he was waiting the train, and he should not have been ejected. The conductor knew that Vinton was only a flag station, and he should have had enough confidence in human nature to believe plaintiff's statement a sufficient length of time to enable him to find out whether or not the facts were as stated; that is, that the train ahead had passed Vinton without stopping.

Had he been less hasty in expelling the passenger, and had he made needful inquiry, he would have found out that he was telling the truth.

The defendant railroad sets up that the passenger should have paid the cash, or that he should have gone out at Edgerly and procured himself a ticket in exchange for the one he held.

In view of the facts, it did not devolve upon the plaintiff to hurry out and nervously explain to the agent at the railroad station the plight in which he was, and to request him to please hasten and give him a ticket in return for the one he held.

The passenger had authority to stand on his right. He was in the train that the defendant company supplied after he had bought his ticket. It was not just to expect him to do some running or fast walking for another ticket under the circumstances.

For reasons stated, the judgment is affirmed.

### On Rehearing.

(June 20, 1904.)

LAND, J. Defendant complains that the quantum of damages allowed by the jury and affirmed by this court is excessive.

Plaintiff sued for $5,000 damages and recovered $250. We affirmed the verdict and judgment appealed from. We held that the ticket held by plaintiff entitled him to transportation to his destination, and that his ejection from the train at a way station was wrongful.·

The contention on rehearing is that the

112 LA.—35

quantum should be reduced to $4.40, the actual pecuniary loss.

The defendant cites the Judice Case, 47 La. Ann. 255, 16 South. 816. In that case there was merely a passive breach of the contract of carriage, consisting of the failure of the conductor to stop the train at the station called for by the passenger's ticket.

In Bader v. Southern Pacific Co., 52 La. Ann. 1060, 27 South. 584, cited by defendant, damages to the amount of $250 was allowed by this court. In that case the passenger was put off at a station short of his destination, through an honest mistake of the conductor, and we held that the passenger could not recover for loss or injury which was not the consequence of the wrong done him, but of his own willful acts of omission or commission. The actual pecuniary loss in that case was trifling, as the passenger could have gone to his destination by the next train, and time was of no consequence to him. We said:

"The railroad company made a mistake, and they [it] must suffer the consequences. But the injury done to the plaintiff was not intentional.

"There were no circumstances of aggravation connected with it, and the suffering of which the plaintiff complains was not so much the consequence of the mistake as of his willful purpose to make the situation worse instead of better."

Yet this court allowed $250 as damages, not as pecuniary loss flowing from the breach of the contract, but as a reparation for a wrongful act.

We assume that the damages were allowed for mortification and humiliation resulting from the ejectment from the train.

In Dave v. R. R. Co., 47 La. Ann. 576, 17 South. 128, where the passenger was carried about 1,800 feet beyond his station on a rainy night, and was then ejected, he was allowed $50.

Hence the authorities cited by defendant's

counsel tend to show that, when a passenger is wrongfully ejected from a train or put off at an improper place, his right of recovery is not limited to actual pecuniary loss.

We have held that, where there has been no ejection, and the negligence consists simply of carrying a passenger beyond his station, "expenses occasioned" and "inconvenience" are elements of damages. Airey v. Pullman Car Co., 50 La. Ann. 648, 23 South. 512. In that case $50 were allowed.

Fetter in "Carriers of Passengers" states the generally accepted doctrine as follows:

"A passenger whose ticket is wrongfully refused on a train, and who is expelled on refusal to pay fare a second time, is entitled to recover the cost of a ticket from the place where he was ejected to the place of destination. He is also entitled to recover such damages as he may have sustained on account of the delay occasioned by the expulsion, and all additional expenses necessarily incurred thereby, as well as reasonable damages for the indignity to which he was subjected in being expelled from the train." Id. vol. 2, p. 1341. We applied this rule in Bader v. Southern Pacific Co., 52 La. Ann. 1060, 27 South. 584.

The wrongful expulsion of a passenger from a train is not only a breach of contract, but an offense or tort, and mental suffering is an element of compensatory damages. Considering this as an element, we are not prepared to hold that the quantum of damages allowed by the verdict is excessive.

For the above reasons, the application for a rehearing is refused.