SINGLETON vs. SOUTHWESTERN RAILROAD.

1. A railroad company which has leased its road, cars and engines, and allows the lessee company to operate the same in the name of the lessor company, is liable to third persons or the public for the carelessness and negligence of the lessee company, in the absence of statutory provision to the contrary.

2. A corporation has only the power conferred upon it by its charter.

Its grants of powers and exemptions are always to be strictly construed, and its obligations are to be strictly performed, whether they may be due to the state or to individuals. A railroad corporation cannot, without special authority of statute, alienate its franchise or property acquired under the right of eminent domain, or essential to the performance of its duty to the public, whether by sale, mortgage or lease.

3. The original obligation of a railroad company to the public cannot be discharged, except by legislative enactment consenting to and authorizing the lease, with an exemption granted to the lessor company from liability. Legislative consent to the lease is not alone sufficient. There must be a release from the obligations of the company to the public.

(a.) In this case the lease itself expressly provides for the continuance of the organization of the lessor company. One of the conditions thereto is that it is to have its president, board of directors, secretary and treasurer. Its corporate powers are exercised and enjoyed under its original charter and the reservations in its lease. It was sued in its corporate name, and in that name appeared and answered; it is recognized under the laws of the state in its corporate capacity; it pleads and is impleaded in none other; it transacts its business through its officers and agents as the Southwestern Railroad; it so dealt with the plaintiff in regard to the very ticket which he bought; and he was not required to look beyond the ticket which conveyed the information that this road was run as railroads generally are, by a chartered company.

(b.) This case differs from that in 66 Ga., 558, which arose between a non-resident individual lessee and a servant, on account of an injury done by a fellow-servant.

4. Where a motion for new trial was predicated on five grounds, and was granted on one alone, thereby overruling the other four, exception being taken to such grant of a new trial by the respondent in the motion, and no cross-bill of exceptions being filed by the movant, so as to secure from this court a direct decision in regard to the grounds overruled, as provided by the act of 1880, we must deal with the judgment granting the new trial and consider it just as it was passed upon by the judge below.*

5. While the damages given by the jury in this case may be high under the evidence, they are not so excessive as to warrant the inference of partiality, prejudice or corruption on the part of the jury, or to require a reversal of the judgment below.

May 1, 1883.

## Railroads.    Corporations.    Leases.    Contracts.    Dam-

---

*See 69 Ga., 678, and foot-note thereto; also Letchworth vs. Geo. Railroad, February Term, 1884.

ages.   Negligence.   Before Judge SIMMONS.   Talbot Superior Court.   September Term, 1882.

In addition to the report contained in the decision, it is only necessary to state that the motion for new trial contained five grounds.   The order granting the new trial was as follows:   " Upon hearing and considering the foregoing motion, it is ordered by the court, that the verdict be set aside and a new trial granted, on the ground that the jury found contrary to the evidence and charge of the court on special plea which is the second plea."

BLANDFORD & GARRARD, for plaintiff in error.

W. S. WALLACE; PEABODY & BRANNON, for defendant.

CRAWFORD, Justice.

This was an action on the case brought by the plaintiff in error against the defendant in error, and in which it was alleged that he purchased a ticket from said defendant to ride upon its road from Howard to Geneva and return; that by the carelessness of the said defendant, and the negligence of its agents in putting him off its train, he was caused to break his leg and suffer other injuries to his great damage, amounting to twenty thousand dollars.

The defendant pleaded the general issue, and at the trial term of the case filed a special plea alleging that, before and at the time of the accident, the road and cars had been leased by the Southwestern Railroad Company to the Central Railroad & Banking Company of Georgia, and that the same were at that time being operated by the latter, and not by the former company.   Upon the trial of the issues formed, the jury returned a verdict for the plaintiff, assessing his damages at six thousand dollars. The defendant moved for a new trial, which the court granted alone upon the ground that the jury found contrary to the evidence and charge on the special plea.   Upon this decision the plaintiff below assigned error, and asks that the same may be reviewed and reversed.

1, 2, 3. The special plea and the evidence thereunder present the question whether a railroad company which has leased its road, cars and engines, and allowed the lessee company to operate the same in the name of the lessor company, is liable to third persons or the public for the carelessness and negligence of the lessee company.

It is now a well settled principle that a corporation, being the creature of the law, has only the powers conferred upon it by its charter, and that all others not necessarily implied therefrom are withheld. Its grants, whether of powers or exemptions, are always to be strictly construed, and its obligations are to be strictly performed, whether they may be due to the state or to individuals. It seems also to be well settled that a railroad corporation, and it is with such that we are dealing in this case, cannot, without special authority of statute, alienate its franchise or property acquired under the right of eminent domain, or essential to the performance of its duty to the public, whether by sale, mortgage or lease. 101 U. S. 71; 17 How., 30; 21 How., 441; 4 Biss., 35; 10 Allen, 448.

It is not questioned that the Southwestern Railroad Company, if it had been operating its road, would have been liable to respond to the plaintiff in error for any damages sustained by him through the negligence of its officers or agents. If, then, it would be so liable when operated by itself, does a lease made to another company discharge it under the law from such liability?

No case involving this precise question has ever been before this court, but in the case of the *Macon and Augusta Railroad vs. Mayes*, 49 *Ga.*, 355, it was held: "Where a railroad company permits other companies or persons to exercise the franchise of running cars drawn by steam over its road, the company owning the road, and to which the law has entrusted the franchise, is liable for any injury done, as though the company owning the road were itself running the cars."

This liability is put upon the ground, that "if a railroad company to which the legislature has granted this fran

chise permit others to use it, the company is responsible
to the public for the negligence of such persons."

This, then, being a fixed obligation upon a railroad cor-
poration, is there any way by which it may allow others to
exercise its franchise, and absolve itself from such obliga-
tion? This can undoubtedly be done by the consent and
authority of the legislature granted to that end.   Pierce,
in his works on American Railroad Law 244, and on Rail-
roads 283, lays down the rule as follows: "The company
cannot divest itself of responsibility for the torts of per-
sons operating its road, by transferring its corporate powers
to other parties, or by leasing its road to them, in the
absence of special statute authority and exemption.   It
cannot by its own act absolve itself from its obligations,
without the consent of the legislature.   The lessees may,
however, also be responsible for the injury."

In support of this principle he cites 26 Vermont, 721,
which says: "The company owning a railroad will be liable
for the acts of their lessees who run the road.   As to the
liability of the defendants for the acts of their lessees, who
were running the defendant's road under a long lease, we
think there can be no doubt.   Unless we can hold the
defendants thus liable, they might put their road into the
hands of corporations or individuals of no responsibility.
It was upon this ground that the English courts denied the
legality of one road leasing itself to another or to private
persons, and the consequent loss of security to the public
without the consent of parliament.   *   *   *   The public,
can only look to that corporation to whom they have dele-
gated this portion of the public service.   Certainly they
are not bound to look beyond them, although they doubt-
less may do so."   See also 17 How., 39; 1 Simon (N. S.)
550; 13 L & E., 506; 17 Wallace, 445; 10 Gray 103; 22
Ill., 109; 4 Cushing 400; 5 Wallace 104.

In Railroad Company vs. Brown, 17 Wallace, 450 and
451, the opinion of Judge Davis is as follows: "The
second assignment of error denies the liability of the cor-

poration for anything done while the road is operated by the lessees and receiver.

" It is the accepted doctrine in this country, that a railroad corporation cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the state, by a voluntary surrender of its road into the hands of lessees. The operation of the road by the lessees does not change the relations of the original company to the public, * * * * for the servants under such an employment, in legal contemplation, are as much the servants of the company as of the lessees and receiver. Apart from this view of the subject, the ticket on which the plaintiff rode, was issued in the name of the Washington, Georgetown and Alexandria R. R. Company, as were all the tickets sold at both ends of the route. The holder of such a ticket contracts for carriage with the company, not with the lessees and receiver. Indeed, there is nothing to show that Catherine Brown knew of the difficulties into which the original company had fallen, nor of the part performed by the lessees and receiver in operating the road. She was not required to look beyond the ticket, which conveyed the information that this road was run as railroads generally are, by a chartered company. Besides, the company having permitted the lessees and receiver to conduct the business of the road in this particular as if there were no change of possession, is not in a position to raise any question as to its liability for their acts."

But it is said that the Southwestern Railroad Company had the consent of the legislature to lease its road, and having entered into a contract with the Central Railroad and Banking Company, under that consent, it is absolved from its obligations to the public under its original charter. Authorities are cited to sustain this doctrine; indeed, some of those hereinbefore referred to are relied upon. The view which we take of the law and the cases cited is that the original obligation can only be discharged by a legislative enactment consenting to and authorizing the lease,

with an exemption granted to the lessor company. To this effect is the rule laid down by Redfield, *supra*, and sustained by the authorities he cites. If this be not so, it is but adding a new grant to the original company, without a law being passed to that effect. That the obligation originally existed, is not denied, and an examination of the act authorizing the lease to be made, will show no such exemption; and without it, we are constrained to hold that no such exists.

"The English statute of 8 and 9 Vict. C. 20, section 87," says Redfield, Law of Railways, 616, "gives special permission to one company to contract with other companies for the right of passage over their track. But an agreement between railway companies, without the authority of the legislature, transferring the powers of one company to another, is against good policy, and a court of equity will not lend its aid to carry such contract into effect. * * * It seems to be considered by the English courts that one railway leasing its entire use to another company does not come within this section of the general statute, and as the public thereby lose the security of the first company for care and diligence in the discharge of its public duties, the contract, unless made in pursuance of an act of the legislature, is illegal, as against public policy." He further says: "But even where such contracts have been made by permission of the legislature, it has been held, in this country, that the company leasing itself does not thereby escape all responsibility to the public. But that the public generally may still look to the original company as to all its obligations and duties which grow out of its relations to the public, and are created by charter and the general laws of the state, and are independent of contract or privity between the party injured and the railway."

In the case of The Ohio and Mississippi Railroad Company *vs.* Sidney Dunbar *et al.*, 20 Ill., 627, the court say : "It will be observed that the legislature has been specific

in the enumeration of the powers granted; but in them all we nowhere find any, either expressly or impliedly, giving this power to lease their road so as to release them from liability." So we say of the present case; we nowhere find the power given to lease this road so as to release it from liability; and without such a release expressly granted or necessarily implied, it does not exist.

We are not unaware of the fact that Maine and Louisiana have taken a different view from that which we hold to be the correct one; but under the construction which this court holds should be given to the chartered rights and exemptions of corporations, we are of opinion that it requires not only the consent, but a release by the legislature, to absolve them from the obligations which they owe the public. This was not done.

Besides, in this case the lease itself expressly provides for the continuance of the organization of the Southwestern Railroad Company. One of the conditions thereto is, that it is to have its president, board of directors and its secretary and treasurer. Its corporate powers are exercised and enjoyed under its original charter, and the reservations set out in its lease. It was sued in its corporate name; it appeared and answered in that name; it is recognized under the laws of the state in its corporate capacity; it pleads and is impleaded by none other; it transacts its business, through its officers and agents, as the Southwestern Railroad; it so dealt with the plaintiff below in the very ticket which it sold him, and, in the language of Judge Davis in the case cited above, he was not required to look beyond the ticket, which conveyed the information that this road was run as railroads generally are, by a chartered company. If, therefore, the Southwestern Railroad Company does not desire to be held responsible to the public for the acts of its lessees, so far as relates to the public under its charter, a legislative grant to that end should be obtained, and the business of the road conducted in the name and under the responsibility of the lessee company.

But it is said that the case of *Jones vs. The Georgia Southern Railroad et al.*, 66 *Ga.*, 558, rules this case in favor of the defendant in error. We do not so understand it. In that case, there were two questions made and decided. One was that the leaving a copy declaration and process with a depot agent was not sufficient service on an individual lessee of a railroad, even though the lease under which he operated the road may have been made by authority of law. The other, that Jones, the plaintiff, being the track hand and servant of the individual lessees, and not of the Georgia Southern Railroad, the latter would not be bound to answer in damages for injuries alleged to have been caused by a co-employé, likewise in the service of the said individual lessees; and especially when the said Jones did not show himself free from fault. The case at bar is widely different, in that it arose, not between the lessee company and one of its servants, but between itself, as operated by the lessee company in its name, and the public, in the exercise of one of its most important franchises—the transportation of passengers.

4, 5. It is insisted by the defendant in error that, although the grant of the new trial was put by the judge below upon the ground which we have been considering, and that it was not a legal ground, yet if the new trial was properly granted upon any of the grounds taken, that his judgment thereon should be affirmed. There were five grounds upon which the defendant asked the court to grant a new trial; the judgment put it upon one specified ground, and that alone, thereby overruling it on the other four. That ruling so made, was excepted to, brought to this court, and error assigned thereon. No cross-bill of exceptions was taken to the overruling of the other grounds, and which was necessary to have been done in order to secure from this court a direct decision upon the questions therein made, as provided by the act of 1880. This not having been done, this court must deal with the judgment granting the new trial, and consider it just as it was passed

on by the judge below.   Under that sound discretion with
which he is invested by law, he held that the defendant
was not entitled to a new trial, except upon the ground
that the jury found contrary to the evidence and charge
on the special plea.

Having disposed of that particular ground, we think it
necessary only to notice that ,which alleges the damages
found to be excessive and unjust.

Upon this, we say that section 3717 of the Code declares
" The presiding judge may exercise a sound discretion in
granting or refusing new trials in cases where the verdict
may be decidedly and strongly against the weight of evi-
dence, although there may appear to be some slight evi-
dence in favor of the finding." And again, in section 3718,
it is declared : " In all applications for new trials on other
grounds not provided for in this Code, the presiding judge
must exercise a sound legal discretion in granting or re-
fusing the same, according to .the provisions of the com-
mon law and practice of the courts."   It has been so long
and so uniformly held that, after the exercise of this dis-
cretion by the circuit judge, it will not be interfered with,
except where it has been abused, that it is scarcely neces-
sary to refer to it.   In the 1st *Ga.*, 610, it was held that,
" this court will not grant a new trial, unless some prin-
ciple of law has been clearly violated, or where there is
manifestly no evidence to sustain the verdict."   It is not
contended in this case that there is no evidence to support
the verdict, but that it is excessive and unjust.   In the
language of McDonald J., in the case of *Bryan vs. Acee
et al.*, 27 *Ga.*, 91, " we consider the damages given by
the jury in this case high, under the evidence, but we do
not consider them so excessive as to warrant the inference
of partiality, prejudice, or corruption on the part of the
jury who rendered the verdict."   And in the same safe
judicial line, we quote from Benning, J., in the case of
*Adkins vs. Williams*, 23 *Ga.*, 224.  He says: " The court
below did not think the damages excessive.   And the

court trying the case must ever receive more light on the question of excessive damages than it can impart to any other court. The damages may be heavy, but there is not enough disclosed to this court to satisfy it that they are excessive. The boundaries for the amount of damages in cases of this kind are anything but fixed."

So that, upon the facts and the law of this case, we see no legal reason upon which to say that the judge below abused his discretion in overruling the defendant's motion for a new trial on this ground, and we conclude this opinion by adding that which McCay, J., said in the case of *Kelly vs. The State*, 49 *Ga.*, 16:

" The real question in this case is whether this tribunal, a court of law, composed of three men, not of the vicinage, shall declare the verdict of a jury, chosen by law, and required and authorized by law to pass on the facts, not supported by the evidence. We have again and again declared our opinion that this court has no power to act as a court of appeal from the verdict of a jury. Indeed, it is only by a sort of fiction that we have jurisdiction at all over a verdict of the jury upon the facts. The constitution expressly declares that this court shall have no original jurisdiction, but shall be a court alone for the trials of errors in law or equity from the superior courts, etc. The constitution gives to the superior court the right to grant new trials in the superior court, on proper and legal grounds, and it is only where the judge of the superior court has, in granting or refusing a new trial, committed an error of law that the jurisdiction of the Supreme Court arises."

Judgment reversed.