# GREGORY *v.* GEORGIA GRANITE RAILROAD COMPANY.

1. In accepting a charter from the State, containing a grant of rights and franchises, a railroad company impliedly assumes the duty of public carrier, and can not divest itself of its public duties nor shirk its liabilities by allowing another corporation, without legislative authority, to take possession of its track and operate cars thereon.

2. Where a railroad company without legislative authority permits another corporation to exercise the franchise of running cars drawn by steam over its track, the company owning the road is liable for an injury due to the defective construction of the track, as though such company itself were operating the cars.

3. Where a railroad company verbally consents for a quarry company to operate cars on its track, and the quarry company transports over such road its employees to and from their work, an employee of the quarry company, who has no connection with the operation of the train, while being so transported, sustains to the railroad company the relation of passenger to the extent that the railroad company and its licensee is bound to exercise extraordinary diligence to keep from injuring him.

4. Where there have been two concurring verdicts for the plaintiff, and no error of law has been committed, and the verdict is amply sup-

ported by the evidence, and the trial judge states in his order granting a new trial that he does so mainly because in his opinion the evidence does not sustain an essential allegation of the plaintiff's petition, the judgment granting a new trial will be reversed where it appears that the trial court erred in deciding as to the legal effect of the evidence which influenced him in granting a new trial.

Argued January 6,—Decided May 13, 1909.

Action for damages.    Before Judge Roan.    DeKalb superior court.    June 27, 1908.

*Hulsey & Field* and *J. D. Kilpatrick,* for plaintiff.

*Westmoreland Brothers* and *Howard & Bolding,* for defendant.

EVANS, P. J.    The Georgia Granite Company, a corporation, owns and operates a quarry about three miles distant from Lithonia, a station on the Georgia Railroad.    In 1904 the Georgia Granite Railroad Company, a corporation chartered under the general railroad law by the secretary of State, constructed a railroad from the quarry to Lithonia.    For the sake of brevity hereafter we shall refer to the Georgia Granite Company as the quarry company and the Georgia Granite Railroad Company as the railroad company. The same person was the president of both corporations, the secretary and treasurer of the railroad company was the general manager of the quarry company, and the vice-president of the railroad company was the superintendent of the quarry company.    The railroad company had no equipment, and immediately after the completion of its track the quarry company used it in transporting their output to Lithonia.    The quarry company has an engine, but no cars, and the cars which it uses are furnished by the Louisville & Nashville Railroad Company, which operates the Georgia Railroad as lessee.    The quarry company employs the engineer, the fireman, and trackmen, who operate the railroad and keep up its track.    There is no formal written lease from the railroad company to the quarry company, and the latter operates the road under verbal arrangement, whereby the quarry company pays the engineer, the fireman, and trackmen, and charges this expense to the railroad company.    The terminus of the railroad at the quarry is called Rock Chapel, and there are two road crossings between Rock Chapel and Lithonia.    In addition to transporting the product of the quarry, the quarry company also hauled fertilizers, cottonseed, and lumber for other persons, and collected freight for the same. Neither the quarry nor the railroad company maintained a ticket-

office or freight-depot, nor was any fare ever charged or collected for carrying passengers. It was usual and customary for the quarry company to haul its employees to and from their work on the train, and to this end they left Lithonia after the arrival of the early passenger-train on the Georgia Railroad, for the accommodation of its employees who came daily by that train. It was also usual to stop at the road crossings between Lithonia and Rock Chapel, to allow its employees to get aboard or leave the train. It was customary not only to haul the employees of the quarry company, but also any other person in the community who wished to ride; and this custom was known to the railroad and quarry companies. In December, 1905, J. E. Gregory, an employee of the quarry company, whose work was not at all connected with the operation of the locomotive or train, while riding with numerous other employees from his work, was injured by the derailment of a car. He sued the railroad company for damages, alleging, that he was riding on this car with the knowledge and sanction of the vice-president and superintendent of the railroad company; that he had paid no fare as a passenger, and did not expect to be called on to pay any fare as a passenger, but he was able and willing and ready to pay fare had any been demanded of him; and that the derailment of the car was due to the defective construction and maintenance of the track. The defendant denied liability, and especially that it was negligent as charged. The plaintiff prevailed, and a new trial was granted. The case was again tried, and the plaintiff obtained a second verdict, which was set aside on motion for a new trial; and it is to this judgment that the plaintiff excepts. In the order granting a new trial the judge stated that it was granted mainly on the ground that the evidence failed to establish the relation between the plaintiff and the defendant of passenger and carrier, as alleged in the petition.

From the identity of the officials of the two corporations, and the cessation of active management by the railroad company after the completion of the line of railroad, and the subsequent operation of it by the quarry company, the railroad track seems to have been constructed mainly for the use of the quarry company. The railroad company, after having obtained from the State a charter, with authority to exercise the right of eminent domain, by virtue of which it laid its track, can not afterwards surrender the exclu-

sive use and control of its track to a private corporation for private purposes. In accepting the grant of rights and franchises from the State a railroad corporation impliedly assumes the duty of a common carrier. The consideration of the grant is the undertaking of the corporation to impartially perform this public duty. 4 Elliott on Railroads, §1392. A railroad company can not divest itself of its public duties, nor shirk its liabilities, by simply allowing another corporation to take possession of its track and operate cars thereon. *Ga. R. Co.* v. *Haas,* 127 *Ga.* 193 (56 S. E. 313, 119 Am. St. R. 327); Civil Code, §1864. It was held in *Macon & Augusta R. Co.* v. *Mayes,* 49 *Ga.* 355 (15 Am. R. 678), that "where a railroad company permits other companies or persons to exercise the franchise of running cars drawn by steam over its road, the company owning the road, and to which the law has entrusted the franchise, is liable for an injury done, as though the company owning the road were itself running the cars." The theory of liability is that where a railroad company owning the track suffers or licenses another corporation or person to discharge its public functions without legislative authority, the latter does so as the agent of the former. Nelson v. Vermont & Canada R. Co., 26 Vt. 717 (62 Am. D. 614); *Singleton* v. *S. W. R.,* 70 *Ga.* 464 (48 Am. R. 574). The rule in the *Mayes* case, supra, was held not to apply in case of a lessee operating the lessor's track under legislative authority, so as to make the lessor liable to the servant of the lessee for the negligence of a fellow servant in the operation of a train. *Banks* v. *Ga. R. Co.,* 112 *Ga.* 655 (37 S. E. 992); *Killian* v. *A. & K. R. Co.,* 79 *Ga.* 234 (4 S. E. 165, 11 Am. St. R. 410). In the present case there was no lease as contemplated by the Civil Code, §2173, and the act of 1899 (Ga. Laws, p. 54), but simply a verbal consent by the railroad company for the quarry company to run its cars over its track at the expense of the quarry company. The act of 1899 provides for a record of a lease contract by a railroad company to another railroad company, or a private person, and declares that a failure to record such lease shall make the lessor company liable for an injury caused by the lessee, and that a defense attempting to shift liability to the lessee shall not prevail. So that there can be no doubt that the railroad company is not absolved from liability as a common carrier for an injury caused by the derailment of the car operated by the quarry company, which was

due to the defective construction and maintenance of the track, simply because it had surrendered its track to the quarry company, and did not itself otherwise engage in the business for which it was incorporated.

The plaintiff alleged that he was a passenger on the car which was derailed, and relies on the foregoing recital of facts as sufficient to show that he sustained this relation to the defendant at the time of his injury. Although in the employment of the quarry company, the duties of his employment were entirely disassociated with the operation of the train. He worked at the quarry, and, in accordance with the general custom of the quarry company, was being transported from his work on its cars when injured. Treating the quarry company as the agent of the railroad company in operating its cars over the latter's track, the servants of the quarry company operating the train, relatively to the public, were the servants of the railroad company. But the employees of the quarry company, whose work had no connection with the operation of the train, were not the servants of the railroad company. As was said in *Central R. Co.* v. *Henderson*, 69 *Ga.* 716, "though one may be an employee of a railroad company, yet if his agency is disconnected from the running of trains, and while traveling he is injured, he stands in the position of a passenger." In this case the plaintiff was a depot agent of the railroad company, and was traveling on a pass. The exaction of fare by a railroad company is not essential in every case to make one riding on its cars a passenger. "One employed by a railroad company as a telegraph lineman, and who is transported to and from his work free of charge by the railroad company, and who while so traveling has nothing to do with the control or operation of the train on which he is riding, is a passenger to the extent that the company is bound to exercise extraordinary diligence to keep from injuring him." *Carswell* v. *M., D. & S. R. Co.*, 118 *Ga.* 826 (45 S. E. 695). The plaintiff was not on the cars by express permission of the quarry company, but was riding in accordance with a general custom, known to its officials, and daily practiced from the time it began to run its engine over the railroad company's track. The quarry company's permission for him to ride to and from his work will be implied from its general habit of transporting its employees to and from their work.

At the time of the injury he was being transported by the agent of the railroad company, to wit, the quarry company.

The conclusion we reach is that under the undisputed evidence the plaintiff sustained the relation of passenger to the defendant.

The grounds of the motion for new trial were that the verdict was contrary to law, contrary to evidence, contrary to the charge of the court, and that a certain excerpt from the charge was erroneous. There was ample evidence from which the jury could find that the derailment of the car was occasioned by the defective construction and maintenance of the railroad track, and that the plaintiff's injury was due to the defendant's negligence. The court charged the jury that the plaintiff could not recover unless it appeared from the evidence that he was a passenger, and, in defining the relation of passenger and carrier, used this language: "What are these elements of fact? First, there must be a carrier of passengers, that is to say, there must be a person, natural or artificial, who must do a business of carrying the public. A railroad company would be an artificial person not a natural person. Second, there must be some person who is willing to be carried by the carrier, and carried under such terms and conditions as the carrier may lawfully prescribe. Third, the actual entry by such person into one of the vehicles furnished by the carrier for the purpose of being carried in accordance with such terms and conditions as the carrier may lawfully prescribe. When these elements of fact are all present, then the relation of carrier and passenger arises." Without stating the very elaborate criticism of this charge, it is manifest that there is nothing therein contained prejudicial to the railroad company. This is the second verdict for the plaintiff, and the court in its order granting a new trial states that he was mainly influenced to grant it because he did not think the evidence was sufficient to establish the relation of passenger. We differ with his honor as to the legal effect of the evidence on this subject. Where there have been two concurrent verdicts for the plaintiff on the same state of facts, and where no error of law has been committed, and where under all the evidence the verdict is not manifestly wrong, the trial judge should not, in the exercise of his discretion, grant a second new trial. *Dethrage* v. *Rome,* 125 *Ga.* 802 (54 S. E. 654). The grant of the second new trial is

*Reversed. All the Justices concur.*