Johnson, J.
The Toledo & Western Railway Company used the tracks of the defendant under a traffic agreement or lease which was introduced in evidence. It recites in the preamble that “both parties desire to enter into a mutual arrangement whereby their lines may connect on said Phillips avenue * * * so that traffic over second party’s road may reach the business portion of Toledo over said first party’s lines.” It is further provided *71 that the Toledo & Western cars shall, when on the tracks of the defendant, be operated and run in accordance with the rules and regulations and at the rates of speed which are or may hereafter be provided or required by the defendant for the conduct, operation and management of the Toledo & Western company’s cars over said route. The contract further provided that the Toledo & Western company should not permit any person to operate its cars within the city of Toledo who was unsatisfactory to the defendant, and that no car of the Toledo & Western company should enter on the tracks of the defendant which was operated by any person who was unsatisfactory to the defendant, after notice to the Toledo & Western company. It also provided that the defendant should receive three and one-half cents for each passenger carried by the Toledo & Western company over defendant’s lines and a reasonable compensation for mail, baggage, etc., and for the keeping of accurate books of account. It also contained the provision that “Said first party shall have the right at any time, and from time to time, as it shall deem proper, to put its own employes and servants in charge of second party’s cars when they enter upon and while on first party’s lines, and to run and operate the same while on said lines in the city of Toledo.”
In the absence of statutory authority, a railroad company cannot lease or license the use of its franchises to operate its railroad to another company and thereby become exempt from liability for torts committed by the lessee or licensee in the operation of cars over the lessor’s tracks. This is conceded by the defendant in error. But it is con *72 tended that where the lease or contract is made under legislative authority, the legislative grant of the right to make the contract by implication discharges the lessor company for torts committed by the lessee in the operation of its trains on the lessor’s road. Authority had been conferred upon these companies to enter into a leasing contract by Section 3443-11, Revised Statutes, and Section 3443-17, Revised Statutes, viz.:
“Such companies shall have power to lease, purchase or make traffic arrangements with any other street railroad company as to so much of its tracks and other property as may be necessary or desirable to enable them to enter or pass through any city or village, upon the same terms and conditions applicable to other street railroads. And any existing street railroad company owning or operating a street railroad shall receive the cars, freight, packages or passengers of any other road, upon the same terms and conditions as they carry for the general public.
“Whenever any railway company is incorporated and organized under the laws of this state for the purpose of building, acquiring, owning, leasing, operating and maintaining a railroad or railroads to be operated by electricity or other motive power from one municipal corporation or point in this state, to any other municipal corporation, municipal corporations, or point in this state, it shall have an authority to make an arrangement or agreement with any street railway company or companies owning or operating any street railway or railways in any such municipal corporation or corporations, and said street railway company or companies *73 shall have authority to make and enter into such arrangement or agreement with said railway company, whereby the passenger cars of such railway company may be run and propelled over and along the track or tracks of such street railway company or companies, for such compensation and upon such terms as may be agreed upon in the same manner, upon the same conditions and for the same length of time as the cars owned or operated by said street railway company or companies are operated in such municipal corporation or corporations. The said cars of said railway company shall, while they are running and being operated over and along the track or tracks of such street railway company or companies in any such municipal corporation, be entitled to all the privileges and subject to all the obligations enjoyed and imposed by and upon the cars of such street railway company or companies owning or operating its cars in any such municipal corporation, and shall be operated only by the same motive power with which the cars of such street railway company or companies are or may be operated. Such arrangement and agreement, when authorized by not less than two-thirds in amount of the stockholders of each company proposing to enter into such arrangement and agreement, ratified by a majority of the directors and executed by the proper officers thereof, shall give to such railway company full authority to operate its said cars on the tracks of said street railway company or companies in such municipal corporation or municipal corporations. Provided that it shall not be necessary for such railway company, in case it uses in any such municipal corporation or municipal *74 corporations, only the tracks of a street railway company or companies owning or operating a street railway or railways within such municipal corporation or municipal corporations' to obtain any additional grant, franchise or right, except by said arrangement or agreement with said street railway company or companies.- Provided further, that the fare charged by said railway company for transporting passengers within the municipal corporation or municipal corporations, shall not be greater than that fixed in the franchise or franchises held or owned by such street railway company or companies; and where there is a public park or cemetery on the line of such railway and within one mile of, and owned by, such municipal corporation, such company shall for such fare so transport passengers to and from said park or cemetery the same as though either was within the limits of such corporation.”
These statutes do not expressly exempt the lessor company from liability for negligence by the lessee company under the circumstances stated, nor make any reference to the subject, but it is insisted that it must have been the legislative intent, when it authorized the making of the contract without reservation of liability, that the lessee alone should be answerable for its torts.
Our attention is called to some decisions in support of this view, among them Moorehead v. United Railways Co., 203 Mo., 121, which is said to be the leading case, and Gwathney v. The Little Miami Railroad Co., 12 Ohio St., 93. In the former case the United Railways Company transferred to The Transit Company of St. Louis, not only the right *75 to operate its railways for the period of forty years, but every franchise held by it, except the franchise to be a corporation and certain real and personal properties. The Transit Company bound itself to operate the railroads and keep them in repair. ' All •of this was done under authority of law. The court say: “We remark emphatically, that as the legislature granted street railway companies power to dispose of their franchise to be a corporation, it could never have been the intention to hold such companies responsible for the acts of a company acquiring the franchises. When a company disposes of its right to be a corporation, it practically passes out of existence, and cannot be held responsible in any legal method which occurs to us. Moreover, a company is authorized by said lease or other lawful contract, to dispose of all its property, which shows that the lawmaking body did not expect it to still stand responsible for the acts of the vendee; for how could it be held responsible if all its property was gone?”
In Gwathney v. The Little Miami Rd. Co., supra, The Little Miami Railroad Company, by a verbal agreement with The D., X. & B. Railroad Company, gave to the latter the right to construct a track on the side of thé defendant’s roadbed, for the purpose of connecting the road of the D., X. & B. with the Little Miami road. The connecting track passed over a bridge previously constructed by the L. M. road for its track, which foot passengers had been permitted to use for the purpose of transit. The plaintiff, in passing on foot over the bridge at night, fell through the same between the rails of the connecting track by reason of its *76 imperfect covering. It was held that if the nuisance complained of was created solely by The D., X. & B. Company in the construction of said connecting track, and said company had the sole ownership, possession and use of said track, the contract between the two companies giving the defendant no power or control in the construction or use thereof, the defendant could not be held liable for the plaintiff’s injury, although the defendant may have had a reversionary interest in the premises subject to the easement of The D., X. & B. Company.
The case we have here presents a very different question. The defendant here was not authorised to and did not turn over to the lessee the exclusive use, possession and control of its track, but, as appears from the contract, it entered into a traffic arrangement by which it was to be a joint user of the tracks of the defendant company, and for such use as was made of its tracks by the Toledo & Western company the defendant was to receive earnings from time to time in accordance with the extent of the use.
The lease by its terms enabled the defendant to put its own employes and servants in charge of the Toledo & Western cars, at any time it might “deem proper,” when they, entered upon its lines, and to operate them while on the lines in the city of Toledo. The whole contract disclosed an intention and agreement of the parties that the defendant, should constantly, exercise a supervisory observation of the operation by the Toledo & Western company, of its cars oyer the defendant’s lines. The use of thp.se lines was. thus clearly a joint use, sub *77 ject to such right of supervision and control in the defendant. The defendant by the terms of the contract occupied such a position as enabled it to perform the duties to the public, which it had assumed, in consideration of the powers and privileges granted to it when it received its franchise. The case is at once distinguished, therefore, from that class of cases in which a company, which is the owner of a track, makes a contract by which it grants the right to another company to use the track exclusively for the operation of its trains and cars thereon. As said in 1 Elliott on Railroads (2 ed.), Section 470: “The fact that exclusive control is not transferred to the lessee is an influential factor. * * * If the lessor company does, retain control its duty is to exercise that control as the law requires.” A kindred distinction is pointed out in The Maumee Rys. & Light Co. v. Montgomery, 81 Ohio St., 426, in which a common carrier was held liable to a passenger for an injury received in a collision between its car and the car of another company, which it had admitted to the joint use of its track, although the collision resulted wholly from the negligence of the latter company. In that case the liability of the owning company was for the breach of its contract of carriage. The court remark: “No principle is suggested which would afford immunity to the owning carrier from the liability for the negligence of its licensee in a case of this character. That there is no such immunity has been held in numerous cases.” One of the cases last referred to is Jefferson v. C. & N. W. Ry. Co., 117 Wis., 549. There the injury resulted'from a defective engine of the licensee. In expressing *78 the judgment the court say: “The principle is well established that, when a railroad company permits another to-make joint use of its track, it is liable for injuries caused to persons or property by the actionable negligence of such licensee. 2 Elliott, Railroads, § 477; Railroad Co. v. Barron, 5 Wall., 90. It has received' its franchise to operate a railroad subject to certain well-defined duties as to the machinery which it uses. It cannot, while exercising those franchises, allow others to come in with defective machinery and use the quasi-public highway, jointly-with it, and escape the duty laid upon it by its charter to use safe machinery. Such a rule would open a door by which public servants, while reaping all- the. pecuniary benefits of their franchises, could- easily escape from a considerable portion of- their correlative duties by licensing irresponsible third persons to transact certain portions of their business.”
The statute-under-which this lease was made enables companies -to enter into such an agreement. It does not compel the owning company to permit the joint use. .Itmay-do so at its option. -It does not permit the directors even to make the contract. It must -be authorized “by not less than two-thirds in amount of-the-stockholders of each company proposing to-enter-into such arrangement'or agreement.”
It might well be held -that from the grant to a railroad company of power to lease its road and the entire control • and operation of it to another company,'- there was an' implication that the legislature intended that the leasing company should be absolved from liability arising from the operation *79 and management of the railroad,; ..but where the owning company still retains its business and still runs its cars over and operates the line of railroad under its own management and control, giving a right of passage to another company, no such implication arises. There is no common-law authority for a railroad company.to lease.its.line at all, in such a manner as to lessen its obligations to the public. Thomas v. Railroad Co., 101 U. S., 71; Chollette v. O. & R. V. Rd. Co., 26 Neb., 159; Hayes v. Northern Pac. Rd. Co., 74 Fed. Rep., 282. The rule has become elementary: that statutes .in derogation of the common law should not by interpretation be extended beyond the plain .import of their terms. Krause v. Morgan, 53 Ohio St., 26, 42; Commissioners v. The Marietta Transfer & Storage Co., 75 Ohio. St., 248.
By the terms of the, lease, involved in this case the Toledo & Western company,agreed to .indemnify and save harmless the defendant from all loss, liability, damage and expense ’caused or claimed to be caused by the negligence of the former. Such provisions would not.fix any legal liability on the defendant, nor should they be given,undue consideration, but they indicate the view that- the parties took of the nature of the contract, they were engaged in making. That the owning company, under circumstances similar to those. found in this case, is not exempt from the .negligence- of its licensee in the absence of express statutory provision, is the view that has been entertained in a number of cases, among which are the following: Braslin v. Somerville Horse Rd. Co., 145 Mass., 64; Chollette v. O. & R. V. Rd. Co., 26 Neb., 159; *80 Singleton v. Southwestern Railroad, 70 Ga., 464; Penna. Co. v. Ellett, 132 Ill., 654; Driscoll v. Nor. & Wor. Rd. Co., 65 Conn., 230; Nelson v. Vermont & C. Ry. Co., 26 Vt., 717.
Careful consideration of the statute under which this lease was made, constrains us to hold that it was not intended that the owning company making such a lease, as was made in this case, should be immune from liability for the negligence of its lessee in the operation of cars over its lines. The liability of the owning company rests upon the principle that, having received valuable rights and privileges to operate dangerous agencies in populous thoroughfares, it incurs obligations of high care in exchange therefor. It should not be permitted, in the absence of express statutory provision, to escape this responsibility by a contract with another company, under which it secured a share in the profits of the traffic, continued its own business and retained the right and power to direct the management and operation of the cars of that other company.
We have considered the suggestions as to error of the common pleas in connection with the issue of contributory negligence and as to a variance in proof, but we find no error in the record of that court in these regards.
For the reasons given the judgment of the court of appeals will be reversed and that of theo court of common pleas affirmed.

Judgment reversed.

Nichols, C. J., Donahue, Wanamaker and Wilkin, JJ., concur.