### GEORGIA SOUTHERN & FLORIDA RY. CO. v. CORRY.

A railway company over whose road a passenger-train, including a sleeping-car, is operated, is liable for damages which are the proximate results of negligence on the part of the employees in charge of the sleeping-car in failing to notify a passenger occupant thereof of the train's arrival at his destination. This is true though the company may not own the sleeping-car or the train, since those having them in charge become its agents and employees as to duties due such passenger, while the train is being operated over its road. Where the passenger in the sleeping-car had no notice of the train's arrival at his destination, he being ignorant of this fact by reason of the darkness of the night, and the train, together with the sleeping-car occupied by him, was, at that place, in accordance with its regular course and schedule, but without his knowledge, switched from the line of road over which he held passage onto the line of road of another and different company, and after being transported for some twenty miles over its road he was required by its conductor and the conductor of the sleeping-car to leave the train during the night, in freezing weather, at a small station where he was unable to secure accommodation, by reason whereof he contracted an illness which caused him much physical pain and mental anguish, *held:*

(a) The company over whose line he held passage and traveled to his destination was not liable in damages for his illness, for the reason that it

was not the proximate result of such company's negligence in failing to notify him of arrival at his destination.

(*b*) There were no aggravating circumstances in failing to give notice of arrival at the destination, so as to authorize a recovery of exemplary or punitive damages.

(*c*) Nor were damages for loss of time and expense incurred by reason of being carried, without notice, beyond the destination recoverable, when not specially sued for, nor the amounts claimed therefor specifically set forth.

(*d*) The petition set forth a cause for the recovery of nominal damages.

No. 1098. July 29, 1919.

Certiorari; from Court of Appeals. *22 Ga. App.* 424 (96 S. E. 335).

This case came before the Court of Appeals on a bill of exceptions filed to review alleged errors committed by the judge of the city court of Tifton, in passing on and overruling a general demurrer and certain special demurrers to a petition brought by Reid Corry against the Georgia Southern and Florida Railway Company, and to review certain alleged errors in the allowance of amendments to the petition. The substance of the petition, as amended to meet special demurrers, was as follows: Plaintiff purchased from the ticket-agent of the Central of Georgia Railway Company, in Atlanta, a through ticket over the line of that company, and the line of the defendant, to Tifton, a station on the defendant's line, and at the same time purchased a ticket for a berth in a sleeping-car attached to the train on which he took passage, and which was due to arrive at Tifton at 3.30, the next morning. Both tickets were taken up by the conductors in charge of the train soon after it left Atlanta. He requested the porter of the sleeping-car, whose duty it was to awaken passengers in time for them to disembark at their destination, to awaken him in time for him to leave the train at Tifton. The porter, however, aroused him at Cordele, a station on the defendant's line forty miles from Tifton; plaintiff thereupon dressed to be ready to get off at his destination, and again requested the porter to notify him upon arrival at Tifton, and this the porter promised to do. Plaintiff was not notified by the porter, or by any one else, when the train reached Tifton, and being unable, on account of the darkness of the night, to recognize the place, he did not know of the train's arrival at that station. The train, including the sleeper in which plaintiff was riding as a passenger, was at Tifton "switched over

.and delivered to the Atlantic Coast Line Railway Company for the purpose of continuing its journey to Jacksonville, Florida, its final destination, over the rails of the Atlantic Coast Line Railway Company, the special Pullman porter and Pullman conductor being on and occupying said Pullman car on said final journey to Jacksonville, as employees of the Pullman Palace Car Company, and as agents of the defendant company; that the conductors, to wit, the Pullman conductor and the Atlantic Coast Line Railway conductor, both in charge of said train and sleeping-car, and acting in the capacity of conductor of the Atlantic Coast Line Railway Company, and the Pullman Palace Car Company, did command, request, and require petitioner to leave said train [at Alapaha, a station 20 miles from Tifton, on the line of the Atlantic Coast Line Railway] when your petitioner was then and there insisting to said conductors aforesaid that he be carried to Waycross, Georgia, or some other convenient place as originally alleged, . . whereas, said agents, servants, and employees, as aforesaid, refused to comply with the petitioner's request, and petitioner was put off at said Alapaha by said conductors. Your petitioner at the time was general manager of the Wade-Corry Company, it being a general dry goods department store in said city of Tifton." Alapaha is a small station, affording little accommodation. The hotel was full and closed, so that plaintiff could not secure a room upon application; the depot was closed, and he could find no place to repose, but had to remain out in the weather, in the rain and cold, on account of which he contracted la grippe, from which he suffered severely for three weeks, being practically unable to attend to his business during that time, and also suffered much mental anguish. Plaintiff was compelled to remain at Alapaha for 6 hours before he could take a train to return to Tifton, and had to pay full fare for his return passage.

The petition was demurred to on the grounds, among others, that it set forth no cause of action, and under the facts alleged the defendant was not liable for any damages claimed by plaintiff by reason of being put off the train by the conductors of the Pullman Palace Car Company and the Atlantic Coast Line Railway Company after the train on which plaintiff was a passenger had been transferred according to its regular schedule from the railroad of the defendant to that of the Atlantic Coast Line Railway Com-

pany. These demurrers, as well as numerous special demurrers to . the petition, were overruled by the trial judge. Upon review his judgment was affirmed by the Court of Appeals, which rendered the following decision (22 *Ga. App.* 424, 96 S. E. 335):

"WADE, C. J. 1. "Where sleeping-cars not owned by the railway company are a part of a train, and are attached to it, presumably in the interest of the railway company, the railway company is still bound by its ordinary obligations and liabilities as a common carrier of passengers to those who make use of the accommodations afforded by the sleeping-cars. In all matters relating to the passenger's safety, the conductor, the porter, and other servants of such cars are the servants of the company of whose train the cars are for the time being a part. *Mize* v. *Southern Ry. Co.*, 15 *Ga. App.* 265 (4), 266 (82 S. E. 925), and numerous cases there cited.

"2. Where one purchased a ticket entitling him to occupy a berth in a Pullman car which constituted a part of the train in which he was a passenger over the line of the railway company, and the porter in charge of the sleeping-car, upon whom rested the duty of arousing each passenger therein in time for him to prepare to disembark at his destination, though explicitly and repeatedly requested to so awake him and though promising to arouse him at his destination, negligently failed to do so, and he was carried beyond it and was put off, by the conductor in charge of the train, at a small station 20 miles beyond his destination, where he was compelled to remain for some hours, without sufficient protection from the inclemency of the weather, by reason of which he contracted a severe illness and suffered physical and mental distress, a right of action was set forth against the railway company.

"(a) The porter and other servants of the sleeping-car were servants of the carrier for the time being as to all matters relating to the safety of the passengers therein.

"(b) The injury sued for did not result through an intervening agency 'not invoked or brought into play by the defendant,' but flowed directly from, and was the natural or proximate result of, the alleged negligence on the part of the carrier. *Western & A. R. Co.* v. *Jackson*, 21 *Ga. App.* 50 (93 S. E. 547, 551).

"3. The court did not err in overruling the general demurrer and the various special demurrers to the petition as finally amended.

"*Judgment affirmed. Jenkins and Luke, JJ., concur.*"

A motion for a rehearing, made by the defendant railway company, was overruled by the Court of Appeals. The case is before this court on certiorari, in the petition for which it is alleged that "The questions involved are these: 1. Is a railway company responsible for the failure of a Pullman porter to awaken and notify a passenger on a Pullman car attached to its train, in time for him to leave the train at his destination,. where no complaint is made as to the failure of the railway company to stop the train long enough for the passenger to alight? 2. If the railway company is responsible, is it further responsible for damages accruing to a passenger by reason of his being ejected from the train after it leaves the line of road of the defendant company, such ejection being the act of the conductor of the Pullman Company and the conductor of another railway company, upon the line of which the train was then traveling?"

*J. E. Hall, Guyton Parks, C. J. Bloch,* and *R. D. Smith,* for plaintiff in error.

*J. S. Ridgdill* and *B. C. Williford,* contra.

FISH, C. J. (After stating the foregoing facts.) A railway company carrying passengers is bound to perform its ordinary obligations and duties to such passengers, though they may occupy a sleeping-car attached to its train under a contract with a sleeping car company owning such car (see authorities hereinafter cited), or when a train of which such sleeping-car forms a part belongs to another railway company, and is operated over the line of the company owning it. *Macon & Augusta R. Co.* v. *Mayes,* 49 *Ga.* 355 (15 Am. R. 678) ; *Gregory* v. *Georgia Granite R. Co.,* 132 *Ga.* 587 (64 S. E. 686). The Court of Appeals was, therefore, correct in making the ruling in the first headnote of the decision under review, which is supported by *Mize* v. *Southern Railway Co.,* 15 *Ga. App.* 265(4), 266 (82 S. E. 925), and cases there cited. See also, to the same effect, 10 C. J. 1179, § 1546, and cases cited. It is one of the duties of a railway company carrying passengers, in order to afford them an opportunity to leave the train at the station of their destination, to have the name of such station announced upon the arrival of the train, and then to stop the train for a sufficient length of time for them to alight with safety. *Southern Ry. Co.* v. *Hobbs,* 118 *Ga.* 227 (45 S. E. 23, 63 L. R. A. 68). And a railway company is responsible to a passenger occupying a sleeping-car of

its train for damages arising from the neglect of the sleeping-car employees to notify him of the approach of the train to his destination, although the sleeping-car company is an entirely different company from the railway company. *Mize* v. *Southern Ry. Co.,* supra, and cases cited; Airey *v.* Pullman Palace Car Co., 50 La. Ann. 648 (23 So. 512). See Campbell *v.* Seaboard Air-Line R. Co., 83 S. C. 448 (65 S. E. 628, 137 Am. St. R. 824, 23 L. R. A. (N. S.) 1056, and note). A passenger in a sleeping-car, not asleep and not occupying a berth, is entitled to notice that he has reached his destination. Pullman Co. *v.* Kelly, 86 Miss. 87 (38 So. 317).

The damages for which a railway company is liable for the failure of the sleeping-car employees to arouse a sleeping passenger and to notify him of his destination, or to give such notice to a passenger in the sleeper, not asleep, and not occupying a berth, are damages of which such negligence is the proximate cause, that is, such as result to a passenger as a natural and probable result of a breach of duty in negligently failing to notify him of the arrival at his destination, and which might or should have been foreseen, or reasonably anticipated as a result of the negligence. Applying this rule to the allegations of the petition in the present case, the defendant railway company was not liable for damages resulting to the plaintiff by reason of his being ejected from the sleeper, or required to leave the train to which it was attached, after the train had been transferred from the defendant's line of road to the line of the Atlantic Coast Line Railway Company. After the train, according to its schedule, had left the defendant company's line and continued on its regular course to Jacksonville, over the line of the Atlantic Coast Line Railway Company, the conductor of that line and the conductor of the sleeping-car company were the agents and employees of the Atlantic Coast Line Railway Company, and not of the defendant railway company, and the latter company was not then responsible for their acts. The defendant company could not reasonably anticipate that after the train left its line, with the plaintiff remaining in the sleeper by reason of its negligence, the agents of the Atlantic Coast Line Railway Company would wrongfully eject the plaintiff from the train, if indeed he was wrongfully ejected by them, as they had the right to eject him if he refused to pay his fare as a passenger of that company, and whether he refused or offered to pay is not alleged. Whatever discomforts, inconven-

iences or injuries the plaintiff may have sustained by reason of his ejection from the train at Alapaha were not the natural and proxi-mate results of the defendant's negligence in failing, while he was a passenger on its road, to notify him of the approach to his destination. He was required to leave the train by the agents of the Atlantic Coast Line Railway Company, over which the defendant company had no control, and what such agents did in requiring plaintiff to leave the train were acts of a separate and independent agency intervening the defendant's negligence and the plaintiff's injuries caused by the ejection. *Perry* v. *Central Railroad*, 66 *Ga.* 746; *Mayor &c. of Macon* v. *Dykes*, 103 *Ga.* 847 (31 S. E. 443); *Central of Ga. Ry. Co.* v. *Price*, 106 *Ga.* 176 (32 S. E. 77, 43 L. R. A. 402, 71 Am. St. R. 246); *Central of Ga. Ry. Co.* v. *Dorsey*, 116 *Ga.* 719 (42 S. E. 1024); *W. & A. R. Co.* v. *Jackson*, 21 *Ga. App.* 50 (93 S. E. 547).

While the petition alleged that the plaintiff had to pay full fare for his passage in returning to Tifton, and that he lost a given length of time from his business by reason of the alleged negligence of the defendant company's agents in not notifying him of the arrival of his train at Tifton, neither the amount of the fare paid nor the value of his time lost by reason of defendant's negligence in failing to notify him of his destination was alleged; and therefore he could not recover for expenses or lost time.

Nor did the mere failure of the employees in charge of the sleeping-car to notify the plaintiff of his destination in accordance with their duty and the promise of the porter to do so, under the facts alleged, amount to such an aggravating circumstance as would entitle the plaintiff to recover punitive or exemplary damages, the allegations presenting no question of willfulness, wantonness, malice, oppression, or conscious indifference to consequences. Civil Code, § 4503; *Southern Ry. Co.* v. *Bankston*, 131 *Ga.* 604 (62 S. E. 1027); *Southern Railway Co.* v. *Nappier*, 138 *Ga.* 31 (5), 37 (74 S. E. 778), and cases cited; *Wadley* v. *Dooley*, 138 *Ga.* 275 (6), 276 (75 S. E. 153), and cases cited; *Jackson* v. *Western & Atlantic R. Co.*, 146 *Ga.* 151 (90 S. E. 963).

The petition set forth facts which authorized a recovery of nominal damages on account of the alleged negligence of the defendant company in failing to notify plaintiff of the approach of the train to his destination; and the overruling of the demurrer to the peti-

tion by the trial judge, and the affirmance of his judgment by the Court of Appeals, in effect so decided. Therefore such rulings are affirmed.

The judgment of the Court of Appeals is affirmed, for the reason that the petition set forth a cause of action for nominal damages, but not for damages of any other character. Judgment is rendered in favor of plaintiff in error against the defendant in error for the costs of the writ of error to the Court of Appeals and of the certiorari to the Supreme Court. *All the Justices concur.*